*97 OPINION of the Court, by
Judge Wallace.
The appellant alleges, that the inferior court erred : “1st. In admitting the depositions of Smith and Lane to be read in evidence on the hearing of the cause. 2d. In deciding that the complainants had such an interest in the entries, and land held thereunder, set up by the bil1 as to authorise them to call in question the title of the defendant to said land — the proper parties were not before the court. 3d. In deciding that the several entries, claimed under and called for by the complainants, were valid, special and sufficiently established. 4th. In the construction put upon, and manner of surveying those entries. 5th. In decreeing a conveyance from the defendant below, before the complainants below had *98 procured conveyances from the parties they claimed tiii* dir-
Aiiegatiotitfat ⅞⅛⅛ a claim tor the duect tax, ing affignment or deed for the ⅞;"'’ *S not suftaTn" billa-gainst the hoi-der of an ad. verse claim to the same land.
a complain. am ni-y i-t up diftinct entries, to enable him to decr^e w»di¡rá.a "
But if are two or more all must-have an interest in one*1.*th*Vel>r tries so set ts the founds. non or equity, agamstthe hoi-her of the aij. s-erse claim,
ranud toafetC tier to include his improvement — he had ouiic csbin and cleared ground, and «OTiTaboutT'o poles3from the cabin, the ca-hnd^both^in11 siudcd in *c fxpredion ⅛ p^verTeM'm'
*98 The first error assigned, is not well founded, in as muc|) as Jaes not appear that the witnesses obiected t0> had a direct interest in the event of this suit, The second and fifth errors assigned, may be considered together. This suit is brought by a number of complainants ; and in their bill they allege that each of them, or the ancestor of some of them, had purchased fr0m William Hayes, or his assignee, for valuable considerations, certain distinct or separate portions os an entry made in his name, except 60 acres claimed by Cadwallader Jones, for which Hayes had also received a vahiable consideration, and that one of the complain-ants was bound to defend the title. A writing which hits been recorded is exhibited, purporting to be a deed ,* c r \ t * r conveyance, tor 400 acres ot the land m contest, from Hayes to William Burney ; and two writings which [iave been recorded, are also exhibited, purporting to be cieeus of conveyance from Burney to two ot the complainants, for separate moieties of the same 400 acres hind. But it appears that when the deed to Burney was executed, Hayes had not obtained a grant therefor, the commonwealth 5 and that, although this deed ¡s rec0rded, it is only proven by one witness. As to other complainants, they have not exhibited,, nor do they even allege, that they hold writings of any kind ^or proportions w hich they claim. The court below has, however, decided in favor of all the complainants, that the defendant, Smith, shall convey to them respectlvely, the several portions of land which they de-r, r ' , 1 . . mand, so tar as those portions are interfered with by his claim. Moreover, the complainants, by an amendment to dteir bill, rety on a grant in the name of Tho-mas Miller, which interferes in part, with the surveys made for Hayes and Smith ; and a lease of Miller*» ian¿ for dlree years, from him to Connelly, one of the j f j ' complainants, is exhibited, which is dated the same day this suit was commenced. And this amendment to the ^hl also states, that Miller’s land had been sold for the direct tax of the United States, and that Connelly had purchased it of those to whom, it was sold ; and refers t0 ^'e certIficate of sale, and the assignment thereon ; which, however, is not exhibited. But the other coca- *99 plainants do not pretend to have any interest in the land granted to Miller; nor do any of the lands they claim, lie within its boundaries. The court is not called to decide, what effect the objections now under consideration ought to have, if they had been made by Hayes. The bill, as to him, has been, taken pro confcsso ; and as to Smith, who is the only appellant, it has not been suggested, nor can it be conceived, that he can be injured by the complainants having united in the suit, so far as they claim under H-ayeg. It could not make his defence more difficult, and on conveying part of his land to them, if decreed to do so, he will be effectually secured against the claim of Iiayes to. that part. True it is, that he would be liable to another suit for the remainder of Hayes’s claim, with which he interferes ; but he would ⅛ equally so, had only one purchaser under TT •1*i J i*ii Hayes, with a complete conveyance, obtained a decree against him ; and it cannot be doubted, but that such a purchaser would have a right to sue him, even without the consent of Hayes. And it may be true, that the example of a suit precisely of this kind, cannot be produced ; but where there is a common interest in several. persons, they may all join in a suit, and a defence under an adverse title, in an instance of one kind, is as easy as in the other. It might be further observed, that it is held, a complainant may bring forward two or more distinct titles, to enable him to obtain a decree against a ti-tie which is in conflict with those he has acquired ;. and in such cases, the defendant would have as good reason to object as in the present case. These errors, however, must be considered as substantial, so far as by the amended bill, the land granted to Miller is brought into view. None of the complainants but Connelly, allege that they have acquired any interest therein ; and had he been the sole complainant, he has not shewn such a permanent interest in it, as by virtue thereof to support a suit against Hayes and Smith, or any adversary claimant. But when combined with others, who do not pretend to have acquired any interest in the land, it is, glaringly repugnant to a fundamental principle of jurisprudence, that those who seek to destroy the title of another, must shew a better title in themselves ; and consequently, that the weakest right cannot be impugned by those who have none. Or if anv doubt can be en-» *100 terlained as to the applicability of this principle to the present case, it will be sufficient to observe, that from any thing which appears, the legal title may yet be in Miller ; and if so, he must have been a party to the suit, to authorise any decree concerning it.
Entry, to br-gln at A’seaft” lomen V. quaiiy ea(t. ««dly — -how
⅛ 011B call explained and . ’'en<lereti calls — ” Craig ns. Ma- †"’ Evan¡'¡ heirs. <vs% Man% jon,s esctcutors &i vs. Baits: "str[0°p 400 westof entry of 500 acres, how
are repUgnCaant* or.eor the other y*acld actua¡ diftance called for ihaii taken 1,1 j^e er line called for. C,I1 for claim deemed surplu-t^men¿r[y without ¡ti
*100 The third and fourth errors assigned, relate to the entries on which the complainants found their claims, and may also be considered together. Miller’s entry has already been put out of the question ; so that the investigation will be confined to that of Háyes, and those ort which it depends. They are as follows : “ July 29th, 1783, William Hayes, assignee, &c. enters 1500 acres of land, &c. on the waters of Licking ; beginning at the northeast corner of the honorable David Jameson’s first entry of 1000 acres, entered May 9th, 1780, and running west along Thomas Jameson’s line 600 poles, to Robert Sanders’s line ; thence with his line north 400 poles ; thence east 600 poles ; thence south 400 poles to the beginning.” David Jameson’s entry called for by Hayes, is as follows: “ May 9th, 1780, the honorable David Jameson enters 1000 acres, &c. beginning at Thomas Jameson’s second entry and on the east end, and to run eastwardly for quantity.” Thomas Jam-eson’s first and second entries alluded to in David Jam-eson’s, are as follows : “ May 9th, 1780, Thomas Jam-eson enters 1000 acres, &c. beginning at Enoch Smith’s eastwardly corner of his settlement, on a branch oí Licking, running east and north for quantity.” “ Also 1000 acres, beginning at the east corner of the above entry, and running north, and west, and south, to adjoin the above entry.” To these two entries of Thomas Jameson’s, there is subjoined a third, as follows : “ Also 500 acres on the west side of the above entry, and running westwardly for quantity.” Two entries in the name of Robert Sanders, must also be recited. “ May 15th, 1780, Robert Sanders, assignee, &c. enters ^400 acres, &e. beginning at Thomas Jameson’s entry of 500 acres on the west end, and running westwardly for quantity.” And “ May 15th, 1780, Robert Sanders, assignee, &c. enters 1000 acres, &c. adjoining his former entry of 400. acres on the north side, and running westwardly for quantity.” It is alleged, that this last entry is intended by Hayes when he calls for Sanders’s line, which has not been denied by the counsel for the adverse party. *101 It may hereafter be necessary to say more with regard to its true situation ; but it is proper first to attend to the certificate of the settlement called for in Thomas Jameson’s first entry; it is as follows : “ November 6, 1779 — -Enoch Smith this day claimed a settlement, See. to a tract of land, lying near the head of Hinkston’s fork of Licking creek, on the west side of a creek called Small Mountain, by improving the same, and raising a crop of corn in the year 1775 and 1776. Satisfactory proof being made to the court, they are of opinion, that the said Smith has a right to a settlement of 400 acres, including said improvement,” &c. It seems to be proven and conceded, that Hinkston’s fork of Licking creek and Small Mountain creek, were well known by those names long before this location was made. And it is likewise fully proven, that Enoch Smith did, in the year 1775, build a cabin on the west side of Small Mountain creek ; and that the improvement was, in the year following, known to the generality of those conversant in its vicinity ; at least, from the testimony, the presumption is irresistible that so was the fact. And it is further proven, that Smith cleared a piece of ground and planted it with corn in 1776, about 130 or 140 poles to the westward of the cabin ; which, it is conceived, ought to be considered as an addition to his improvement, and which induced the expressions in the certificate, “ by improving the same, and raising a crop of corn in the year 1775 and 1776.” And it is probable, that Smith claimed, and the commissioners meant to grant him, an actual settlement, although it is not very definitely expressed. Be *his as it might, this court is of opinion, that those imp cements had sufficient notoriety, and that they ought to be taken as comprehended in the expression, “ i eluding the said improvement.” It is more doubtful how he expression, “on the west side of the creek calh i Small Mountain,” ought to be construed. : may he taken as a general description of the creek and the side of the creek intended ; and so taken, this call certainly confines the settlement to the west side of the creek. But the call does not necessarily imply that it should bind on the creek ; and the improvement, which ought to be considered as the principal object, may be at such a distance from the creek as tQ imply the contrary. The principle of squaring a *102 settlement, and including the improvement in the cen-» tre> with the lines to the cardinal points, was embraced at a very early day, where, from the location, the form of the claim was not otherwise pointed out. This principle was so clearly founded on the nature of the case, that it has been adhered to ever since ; (a) and has keen a^so appl'lefl to a great number of other locations, were similarly circumstanced. And it seems to the court, that it ought to be applied to the present case; and that Enoch Smith’s improvement, or rather, that his two improvements, should have been thus in-eluded in the centre of his settlement survey, unless the eastern boundary had extended to the creek ; and, from [}le connected plat, it is obvious that this would not have happened.
The next entry to be adjusted, is Thomas Jameson’s ; “beginning at Enoch Smith’s eastwardly corner of his settlement, See. running east and north for quantity.’5 It is evident that this settlement had no eastwardly corner, and on that account, this entry of Thomas Ja-meson’s is very vague and uncertain. The settlement had two corners, the one as much eastwardly as the other ; therefore, conformably to the principle establish-edin the first decision, Morgan vs. Robinson, (b) and in the decision Craig vs. Rodgers, (c) a locator, who aimed to appropriate land to the north, was justifiable in presuming that Thomas Jameson meant to begin at Enoch Smith’s southeast corner, and tc run from it east and north, so as to include his quantity in a square ; more especially, as there is no other call in the entry which certainly evinces the contrary. Thomas Jame-son’s second entry contains the same impropriety as his first. It calls for “ beginning at the east corner of the above entry that is. to say, his first entry. But this is cured by the other calls it contains ; which necessarily place it on the north of the first entry, and in a square. And there can be no doubt but David Ja-meson’s entry should adjoin Thomas Jameson’s second entry on die east, and in a square.
We now return to Hayes’s entry, on which the complainants found their claims. The first call in this entry is, beginning at the north east corner of the entry last alluded to. But the survey made thereon, begins at its northwest corner, which the court below has sane- *103 úoued by its decree. It may aid in determining Ais point, to attend to Thomas Jameson’s entry of 500 acres, and the two entries of Robert Sanders, which have been recited. This entry of Thomas Jameson’s calls to lie on the west side of his second entry ; and Robert Sanders’s 400 acre entry calls to lie on the west side of Thomas Jameson’s 500 acre entry: and it appears, that' Thomas Jameson’s last mentioned entry has been surveyed to adjoin the survey on his second entry to the full extent of its west line ; and that Sanders’s 400 acre entry has been surveyed so as to adjoin the 500 acre survey to the full extent of its west line. And it is contended, on behalf of the complainants, that these surveys were rationally made, and conformably to the general apprehensions of locators at that time. On which, it is only requisite to observe, that when an entry calls to adjoin an entry of the same size, and the other calls in both of them are to the same effect, or at least, do not forbid it, it is certainly rational to presume that the latter was meant to adjoin the former in its whole extent; but when there is an inequality in their size, the rationality of the presumption would as certainly be weakened, if not destroyed ; and when there is a very great disproportion, the presumption, would be glaringly absurd. For example, if an entry for 100,000 acres called to adjoin an entry for 100 acres ; if the width of the survey made on the large entry was to be determined by the length of the side or end of the small entry, a long slip would be produced, which might extend across the county, if not across the state ; whereas, it could not be rationally presumed that such was the intention of the locator : nor is it necessarily implied, It is believed, that considerations of this kind induced the late supreme court for the district of Kentucky to decide, that when an entry did not explicitly, or by necessary implication, give form to itself, that if it could be sustained at all, it should be surveyed in a square, or as nearly so as circumstances would permit; and in the case Smith vs. Grimes, (a) the squaring principle was applied to entries exactly similar to those now in question, and that decision has been uniformly regarded as a precedent by this court. If, in some instances, this principle, or general rule, should produce hardships, they ought to be charged to the locators, who did not *104 make their entries as particular as they might easily have done. Therefore Thomas Jameson’s 500 acre en* try should have been surveyed in a square, with the middle of its east line at the middle of the west line of the survey on his second entry, when made as before directed. And Sandeis’s 400 acre entry have been surveyed to adjoin in the same manner, the survey just prescribed on Thomas Jameson’s 500 acre entry, And then Sanders’s 1000 acre entry should be surveyed according to its calls, expressed and implied, “ adjoining his former entry of 400 acres on the north side, and running west and north for quantity.” Now it is evident from the connected plat, that taking these surveys, either as they have been made, or as they ought to have been made, if Hayes’s survey begins at David Jame-son’s northeast corner, and is made agreeably to the distances called for in his entry, it will not extend much more than half way to Sanders’s 1000 acre entry. Besides, after the call “ northeast,” immediately follows the call, “ running west along Thomas Jameson’s line to Sanders’s line.” These two considerations combined, satisfactorily evince, that the first call was meant to be northwest, and not northeast; and this, it is conceived, other locators must have discovered. But Hayes’s survey has only been extended the 600 poles called for, and not to the place where Sanders’s line ought to have been run. This the court below has also sanctioned, and no doubt very correctly; because thus to have extended to Sanders’s line, would have far exceeded the specified distance ; and where there are repugnant calls, one or the other must be disregarded ; and in this case, it seems that an actual distance ought to be regarded more than an imaginary line. Indeed the entry is full and complete without it; and in this point of view, it is mere surplusage. Hayes’s beginning having fceen fixed, the survey can be completed with ease and certainty, by running the courses and distance specified in hié entry. But from what has been observed it will appear, that this court is of opinion, that the court below erred in directing the manner in which Enoch Smith’s settlement should be surveyed, and in the manner Thomas Jameson’s first entry should be adjoined thereto, as well as in its whole decree respecting Miller’s claim.

*0

*105 Wherefore, it is decreed, and ordered, that the said decree of the circuit court be reversed ; and that the appellees do pay unto the appellant his costs in this court expended. And it is further decreed, and ordered, that the suit be remanded to the said court, that it may dismiss the amended bill with costs; cause a resurvey to be executed, and enter up a decree in conformity to the foregoing opinion, in favor of such of the complainants in that court, as shall be found entitled to recover any land from the defendant Smith, on their original bill ; and decree and order whatever else law and equity may require.
On petition, a rehearing was granted, and in spring term 1810, this decree was ordered to stand unaltered and affirmed.

 Acc. Craig vs. Macbir ante 10-M'Crackin's heirs vs. Steele & als. ante 46—Swearingen vs. Black vs. Batts, ante 95-Green vs. Watson, post.

 Pr. Dec. 269.

 Har. 137.

 Hugh. 18— Same principle, M'Ghee vs. Thompson-Craig vs. Macbir—Meshy & Craig vs. Craigland-Davis's heirs vs. Lockhart's heirs, Har. 368-Moore vs Harris, Pr.Dec.26.